[833 NYS2d 645]

In the Matter of JEFFREY M. ADAMS (Admitted as JEFFREY MARK ADAMS), an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE NINTH JUDICIAL DISTRICT, Petitioner.

Second Department, April 17, 2007

## APPEARANCES OF COUNSEL

*Gary L. Casella*, White Plains (*Gloria J. Anderson* of counsel), for petitioner.

*Jones Garneau, LLP*, Scarsdale (*Deborah A. Scalise* of counsel), for respondent.

## OPINION OF THE COURT

Per Curiam.

The Grievance Committee served the respondent with a petition dated July 5, 2005, containing eight charges of professional misconduct against him. The respondent answered the petition, and following a hearing held on October 18, 2005, November 16, 2005, November 18, 2005, and November 21, 2005, the Special Referee sustained all eight charges. The Grievance Committee now moves to confirm the Special Referee's report and

to impose such discipline as the Court deems appropriate. In his responsive papers, the respondent concedes that Charges One through Seven were properly sustained by the Special Referee, but he requests that Charge Eight be disaffirmed and that this Court limit the discipline imposed to no greater than public censure.

Charge One alleges that the respondent is guilty of commingling personal funds with funds being held on behalf of his client in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]).

The respondent maintained an account entitled "Adams Law Firm P.C. IOLA Trust Account" at Union State Bank. Between April 30, 1999, and September 30, 2003, he deposited and/or retained earned legal fees and reimbursed expenses totaling approximately $230,278 in the IOLA account.

Charge Two alleges that the respondent is guilty of breaching his fiduciary duty and/or engaging in conduct adversely reflecting on his fitness as a lawyer by failing to safeguard client funds and/or failing to maintain adequate client funds in his firm's IOLA account in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]) and/or DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

The respondent "adjusted" the IOLA account by making periodic disbursements of the earned fees to the Adams Law Firm twice on August 10, 1999, in the sums of $2,897.29 and $17,696.89, once on June 14, 2001, in the sum of $56,304.34, and twice on January 17, 2003, in the respective sums of $10,119.19 and $91,134.88. He made disbursements to Charles Schwab & Co. on November 21, 2001, and November 23, 2001, in the sums of $30,635.36 and $4,718.38, and to Eugene Adams on August 18, 1999, in the sum of $2,385.98.

The respondent was not able to explain how he determined the specific amounts of the disbursements and/or the names of the clients to whom they related. With respect to four disbursements made to the Adams Law Firm and one to Eugene Adams, on the dates these were made, there were insufficient earned fees and reimbursed expenses on deposit in the IOLA account to cover the "adjustments." With respect to the two disbursements made to Charles Schwab & Co. and the January 17, 2003, disbursement to the Adams Law Firm in the sum of $10,119.19, insufficient earned fees and reimbursed expenses were on deposit in the IOLA account on the dates that these were made to cover the "adjust-

ments." Consequently, the disbursements were drawn in whole and/or in part against funds being held for the benefit of clients. The January 17, 2003, disbursement in the sum of $91,134.88 made to the Adams Law Firm created a negative balance of earned fees and reimbursed expenses on deposit in the account, which remained negative through September 30, 2003, the end of the period audited by the Grievance Committee. On September 30, 2003, the balance of earned fees and reimbursed expenses on deposit in the IOLA account was minus $34,313.82.

Charge Three alleges that the respondent is guilty of breaching his fiduciary duty and/or engaging in conduct adversely reflecting on his fitness as a lawyer by failing to safeguard client funds in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]) and/or DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

On June 29, 1999, the respondent mistakenly deposited into the operating account escrow funds relating to his clients Weber and Gura totaling $24,500. The respondent failed to review the operating account records and/or take corrective action, and failed to discover the mistaken deposit until it was brought to his attention by the Grievance Committee.

Charge Four alleges that the respondent is guilty of breaching his fiduciary duty and/or engaging in conduct adversely reflecting on his fitness as a lawyer by failing to safeguard client funds and/or failing to maintain adequate client funds in his firm's IOLA account in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]) and/or DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

The respondent made 24 disbursements from the IOLA account in various amounts ranging from $63.53 to $14,824.76, in connection with one or more matters involving 16 different clients, between June 8, 1999, and September 19, 2003. At the time of these disbursements, there were no funds and/or insufficient funds on deposit in the IOLA account relative to the matters to cover these disbursements.

Charge Five alleges that the respondent is guilty of failing to maintain required bookkeeping records of an attorney escrow account in violation of Code of Professional Responsibility DR 9-102 (d) (1), (2) and (9) (22 NYCRR 1200.46 [d] [1], [2], [9]).

The opening balance in the IOLA account on April 30, 1999, the first day of the period audited by the Grievance Committee,

was $150,758.30. Of that amount, the respondent provided the names of the clients for whom he was holding funds totaling $88,450.86. According to the respondent, the $62,307.44 remainder of the opening balance represented earned fees and/or reimbursed expenses belonging to his firm. However, he was not able to provide the names of the clients to whom the fees and/or reimbursed expenses related or the amount of fees and/or reimbursed expenses attributable to each client.

Charge Six alleges that the respondent is guilty of breaching his fiduciary duty and/or engaging in conduct adversely reflecting on his fitness as a lawyer by failing to safeguard client funds in his firm's IOLA account in violation of Code of Professional Responsibility DR 9-102 (a) (22 NYCRR 1200.46 [a]) and/or DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

One or more of three client disbursements made on January 11, 2001, in the sum of $8,850, on January 18, 2001, in the sum of $18,242.31, with respect to client Dionaldo, and on October 26, 1999, in the sum of $5,000, with respect to client Horowitch, were drawn by the respondent from the IOLA account and prior to the time that he made the corresponding client deposit.

Charge Seven alleges that the respondent is guilty of breaching his fiduciary duty and/or engaging in conduct adversely reflecting on his fitness as a lawyer by failing to promptly pay to or on behalf of a client all the funds the client was entitled to receive in violation of Code of Professional Responsibility DR 9-102 (c) (4) (22 NYCRR 1200.46 [c] [4]) and/or DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]). The respondent failed to promptly disburse the balance of funds he was holding in the IOLA account in connection with one or more of eight client matters in amounts from $196.67 to $1,904.98. He disbursed the funds only after his failure to do so was brought to his attention by the Grievance Committee.

Charge Eight alleges that the respondent is guilty of engaging in conduct that adversely reflects on his fitness as a lawyer by sharing legal fees with a suspended attorney without making application to the Court, on notice to the client, to fix the amount and manner of payment for legal services rendered and disbursements incurred by the suspended attorney prior to the effective date of the suspension in violation of 22 NYCRR 691.10 (b) and/or Code of Professional Responsibility DR 1-102 (a) (7) (22 NYCRR 1200.3 [a] [7]).

On January 1, 1994, the respondent became partners with his father, Eugene J. Adams, in the firm of Adams & Adams

P.C., and they continued to practice law together until Eugene J. Adams was suspended from the practice of law in the State of New York effective September 19, 1996 (*Matter of Adams*, 224 AD2d 4 [1996]). Thereafter, the respondent continued to practice as Adams Law Firm P.C., which became the attorney of record for the firm's pending cases, the majority of which were personal injury matters. The name on the firm's escrow account was changed from "Adams & Adams P.C. Escrow Account" to "Adams Law Firm P.C. IOLA Trust Account." The account number remained the same and the respondent became the sole signatory on the account. The respondent paid a portion of the firm's earned fees and/or reimbursement in amounts ranging from $140 to $98,715.80 for expenses incurred to Eugene J. Adams on at least 44 separate occasions during the period audited by the Grievance Committee, April 30, 1999, through September 30, 2003, totaling approximately $211,000. The respondent customarily reported the fees he shared with Eugene J. Adams on closing statements that he filed with the Office of Court Administration pursuant to 22 NYCRR 691.20, as quantum meruit payments for legal services rendered. Neither the respondent nor Eugene J. Adams applied to the Court to fix the amount and/or manner of these payments.

At the hearing, pursuant to stipulation I, 23 exhibits were submitted into evidence, the respondent admitted the factual allegations in Charges One through Seven, and he stated that he would offer evidence in mitigation. With respect to Charge Eight, the respondent also admitted the underlying factual allegations and further conceded that he did not make an application to the Court to fix the amount and/or manner of payments to Eugene J. Adams. He asserted that he would present evidence and legal arguments that Charge Eight should be dismissed, or in the alternative, offer evidence in mitigation. Additionally, the parties submitted stipulation II setting forth what would have been the testimony of the respondent's bookkeeper, Lois Ryan, if she had been called as a witness.

The Grievance Committee introduced no witnesses. In mitigation, the respondent testified on his own behalf and presented the testimony of his therapist, a licensed clinical social worker, and seven character witnesses. Additionally, he submitted into evidence numerous letters attesting to his character, reputation, and personal integrity, as well as various documents relating to his community service.

Based upon the respondent's concession that Charges One through Seven were properly sustained by the Special Referee, and on the evidence adduced, we find that all seven charges should be sustained. We also find that the Special Referee properly rejected the respondent's arguments with respect to Charge Eight, and sustained that charge finding the respondent guilty of misconduct with respect to the payments he made to his father. The contention that court intervention is not required in order to share fees with a disbarred or suspended attorney is erroneous. We have held that compensation to a disciplined attorney is capped by the rule of quantum meruit and that fee-splitting agreements between such attorneys are not binding on the Court (*see Padilla v Sansivieri*, 31 AD3d 64, 68 [2006]; *Matter of Marett v Pegalis & Wachsman*, 176 AD2d 321, 322-323 [1991]). Accordingly, the Grievance Committee's motion to confirm the Special Referee's findings sustaining Charges One through Eight is granted.

In determining an appropriate measure of discipline to impose, the Grievance Committee advises that the respondent's prior disciplinary history includes a letter of caution issued by the Rockland County Bar Association and four letters of admonition, one personally delivered, issued by the Grievance Committee for the Ninth Judicial District.

By letter dated April 6, 1993, the Rockland County Bar Association cautioned the respondent and reminded him of an attorney's ethical obligation to advise a client of fee arrangements and to keep records which are sufficiently accurate and detailed to calculate the fee.

By letter of admonition dated November 4, 1999, the Grievance Committee expressed its concern to the respondent that he failed to withdraw from employment promptly after he was discharged by the client.

By letter of admonition dated June 29, 2001, the Grievance Committee advised the respondent that it found that he had notice of, but failed to honor, a valid chiropractor's lien.

By letter of admonition dated March 14, 2002, and personally delivered to the respondent, the Grievance Committee expressed its concern that (1) he failed to make a reasonable effort to settle a fee dispute in the best interest of the client, and (2) he contacted the client directly after receiving notice of her intent

to change attorneys via a properly executed consent to change attorney form.

By letter of admonition dated March 31, 2004, the Grievance Committee advised the respondent that he had notice of a chiropractor's lien and he failed to honor the lien and/or hold the disputed funds in escrow.

Notwithstanding the corrective measures taken by the respondent to properly safeguard monies entrusted to him by his clients, the absence of venality and loss to any client, his health-related issues, his remorse, and other mitigating factors, the evidence presented demonstrates multiple breaches of his fiduciary obligation and longstanding disregard of appropriate escrow practices. Under the totality of circumstances, the respondent is suspended for a period of one year.

PRUDENTI, P.J., SCHMIDT, CRANE, MASTRO and RIVERA, JJ., concur.

Ordered that the petitioner's motion to confirm the report of the Special Referee is granted; and it is further,

Ordered that the respondent, Jeffrey M. Adams, admitted as Jeffrey Mark Adams, is suspended from the practice of law for a period of one year, commencing May 10, 2007, and continuing until the further order of this Court, with leave to the respondent to apply for reinstatement no sooner than six months before the expiration of the one-year period upon furnishing satisfactory proof that during that period he (a) refrained from practicing or attempting to practice law, (b) fully complied with this order and with the terms and provisions of the written rules governing the conduct of disbarred, suspended, and resigned attorneys (22 NYCRR 691.10), (c) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11 (c), and (d) otherwise properly conducted himself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until the further order of this Court, the respondent, Jeffrey M. Adams, admitted as Jeffrey Mark Adams, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding himself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Jeffrey M. Adams, admitted as Jeffrey Mark Adams, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency and the respondent shall certify to the same in his affidavit of compliance pursuant to 22 NYCRR 691.10 (f).