[38 NYS3d 606]

In the Matter of JACQUELINE HAROUNIAN, an Attorney, Respondent. GRIEVANCE COMMITTEE FOR THE TENTH JUDICIAL DISTRICT, Petitioner.

Second Department, October 12, 2016

80

APPEARANCES OF COUNSEL

*Mitchell T. Borkowsky*, Hauppauge (*Carolyn Mazzu Genovesi* of counsel), for petitioner.

*McDonough & McDonough, LLP*, Garden City (*Chris McDonough* of counsel), for respondent.

OPINION OF THE COURT

Per Curiam.

The Grievance Committee for the Tenth Judicial District (hereinafter the petitioner) served the respondent with a verified petition dated March 4, 2015, containing 11 charges of professional misconduct. The petition was amended by stipulation at a hearing conducted on October 14, 2015. After the hearing, the Special Referee sustained all charges. The petitioner now moves to confirm the report of the Special Referee, and to impose such discipline upon the respondent as this Court deems just and proper. The respondent, by her attorney, joins in the petitioner's motion to confirm, and requests that the Court refer the matter back to the Grievance Committee for the issuance of a private sanction, or, in the alternative, issue a sanction no greater than a censure.

Charge 1, as amended, alleges that the respondent misappropriated funds entrusted to her, incident to her practice of law, in violation of DR 9-102 (a) of the former Code of Professional Responsibility (22 NYCRR 1200.46 [a]), now rule 1.15 (a) of the Rules of Professional Conduct (22 NYCRR 1200.0), as follows:

At all relevant times herein, the respondent maintained three bank accounts at Capital One Bank incident to her law

practice, to wit: an escrow management transfer account (hereinafter the escrow account), the A/A/F Arsada Corp. LLC account (hereinafter the Arsada account), and the A/A/F MFM Construction LLC account (hereinafter the MFM account). The escrow account was the respondent's attorney trust account, the Arsada account was an account the respondent opened as an attorney for the benefit of Arsada Corp. LLC, and the MFM account was an account the respondent opened as an attorney for the benefit of MFM Construction LLC, a real estate construction company.

The respondent represented Brookfield Properties, as the seller of real property located at 1181 East 222nd Street, Bronx, New York (hereinafter the 222nd Street transaction). The respondent's husband, Maurice Harounian, and brothers-in-law, Michael Harounian and Roland Eschagoff, owned or had an interest in Brookfield Properties. As attorney for the seller, the respondent received from the purchaser, Michael Hanchard, a contract down payment in the sum of $20,000, which she deposited into the Arsada account on August 23, 2005.

On October 26, 2005, the respondent transferred the entire balance of the Arsada account into the escrow account, completely liquidating the Arsada account. Between August 23, 2005 and October 26, 2005, there were no disbursements of Hanchard's $20,000 down payment to or on behalf of either party to the 222nd Street transaction from the Arsada account or the escrow account.

During the closing for the 222nd Street transaction on November 4, 2005, the respondent executed an escrow agreement, which stated, in relevant part, that she was to continue to hold the $20,000 down payment to ensure that issues regarding the status of the property and repairs on the property were completed (hereinafter the Hanchard escrow). Pursuant to the escrow agreement, the "funds shall not be released to seller until November 8, 2005, or until authorization obtained by David Morris." Between November 4, 2005 and December 9, 2005, there were no disbursements of the Hanchard escrow. By letter dated December 9, 2005, Hanchard's attorney notified the respondent that there was a dispute related to the conditions set forth in the escrow agreement, obligating the respondent to retain the escrow deposit. As of the date of the petition, the Hanchard escrow as well as the issues surrounding its release had not been resolved.

Between October 26, 2005 and December 17, 2008, the respondent transferred funds back and forth between the

escrow account and the MFM account, and disbursed funds from those accounts to or on behalf of her husband, Maurice Harounian, and her brothers-in-law, Michael Harounian and Roland Eschagoff. During that same period, the respondent disbursed funds from the escrow account and the MFM account to or on behalf of herself to pay personal expenses unrelated to the 222nd Street transaction or the escrow agreement. While the respondent was entrusted with the Hanchard escrow, the collective balance on December 17, 2008 in all three bank accounts (Arsada account, escrow account, and MFM account) was $1,727.12, which is less than the $20,000 she was obligated to maintain pursuant to the escrow agreement.

Charge 2 alleges that the respondent violated her fiduciary responsibility by commingling personal funds with funds entrusted to her, incident to her practice of law, in violation of DR 9-102 (a) of the former Code of Professional Responsibility (22 NYCRR 1200.46 [a]), now rule 1.15 (a) of the Rules of Professional Conduct (22 NYCRR 1200.0). In addition to the factual specifications contained in charge 1, between October 26, 2005 and July 23, 2010, while the Hanchard escrow and other client funds were on deposit in the respondent's escrow account, she deposited personal funds unrelated to her fiduciary duties into that account, including but not limited to: certain fees, credits for her automobile lease, checks written as gifts for her children, and refunds and credits from retail establishments.

Charge 3 alleges that the respondent violated her fiduciary responsibility by failing to keep funds entrusted to her and belonging to another person, in a special account or accounts, separate from any business or personal accounts, in violation of DR 9-102 (b) (1) of the former Code of Professional Responsibility (22 NYCRR 1200.46 [b] [1]), now rule 1.15 (b) (1) of the Rules of Professional Conduct (22 NYCRR 1200.0). In addition to the factual specifications contained in charges 1 and 2, charge 3 alleges, among other things, that by letter dated November 20, 2013, the respondent admitted, in relevant part, that she wrote checks for business and personal expenses out of the escrow account and that she did not segregate escrow monies from her personal funds.

Charge 4 alleges that the respondent violated her fiduciary responsibility by failing to keep funds entrusted to her and belonging to another person, in a special account separate from any account which the respondent maintained in another

fiduciary capacity, in violation of DR 9-102 (b) (1) of the former Code of Professional Responsibility (22 NYCRR 1200.46 [b] [1]), now rule 1.15 (b) (1) of the Rules of Professional Conduct (22 NYCRR 1200.0). On August 23, 2005, the respondent deposited the Hanchard down payment from the 222nd Street transaction into the Arsada account, which account was opened for the Arsada Corporation, a client of the respondent who had business unrelated to the 222nd Street transaction.

Charge 5, as amended, alleges that the respondent violated her fiduciary responsibility by possessing funds belonging to another person, incident to her practice of law and placing those funds into an account that was not identified as an "Attorney Special Account," "Attorney Escrow Account," or an "Attorney Trust Account," in violation of DR 9-102 (b) (2) of the former Code of Professional Responsibility (22 NYCRR 1200.46 [b] [2]), now rule 1.15 (b) (2) of the Rules of Professional Conduct (22 NYCRR 1200.0). Between August 23, 2005 and October 26, 2005, the Hanchard escrow was held in the Arsada account.

Charge 6 alleges that the respondent failed to produce her bank records pursuant to DR 9-102 (d) of the former Code of Professional Responsibility (22 NYCRR 1200.46 [d]), now rule 1.15 (d) of the Rules of Professional Conduct, in violation of DR 9-102 (j) of the former Code of Professional Responsibility (22 NYCRR 1200.46 [j]), now rule 1.15 (j) of the Rules of Professional Conduct (22 NYCRR 1200.0). By letter dated March 30, 2010, the petitioner requested the respondent to produce copies of the records in connection with the bank account(s) where the Hanchard escrow had been maintained since August 23, 2005, including copies of all checks issued against those funds, and the check register/ledger which would identify the date, source, and description of each item deposited, as well as the date, payee, and purpose of each withdrawal or disbursement. In response, by letter dated March 31, 2010, the respondent advised the petitioner that she did not have her bank statement(s) from 2005 because her records were destroyed in a flood, but she stated that she would attempt to locate her check register/ledger.

The petitioner made an additional request of the respondent by letter dated April 8, 2010 for the bank records from the account(s) in which the Hanchard escrow was maintained. The respondent provided partial bank statements for the escrow account on May 7, 2010. By letter dated July 22, 2010, the respon-

dent advised the petitioner that she had requested the records from Capital One Bank for the Arsada account and the MFM account for the period 2006 through 2008. Thereafter, the respondent provided partial bank statements for the Arsada account and the MFM account on August 2, 2010, and advised the petitioner that she had "confirmed" with the bank that the Arsada account and the MFM account records were "not appearing in their system" and they were unable to be provided. Nevertheless, pursuant to subpoena, the petitioner obtained the bank records in or about September 2010, from Capital One Bank for the Arsada account, the escrow account, and the MFM account.

During her examination under oath (hereinafter EUO) at the petitioner's office on September 9, 2013, the respondent testified that she did not maintain a check register/ledger for her bank accounts.

Based upon the factual specifications contained in charges 1 through 6, charge 7 alleges that the respondent failed to maintain and keep the required bookkeeping records of all deposits and withdrawals from her accounts, incident to her practice of law, in violation of the former Code of Professional Responsibility DR 9-102 (d) (22 NYCRR 1200.46 [d]), now rule 1.15 (d) of the Rules of Professional Conduct (22 NYCRR 1200.0).

Charge 8, as amended, alleges that the respondent engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of DR 1-102 (a) (4) of the former Code of Professional Responsibility (22 NYCRR 1200.3 [a] [4]), now rule 8.4 (c) of the Rules of Professional Conduct (22 NYCRR 1200.0), by making inconsistent representations that all or a portion of Hanchard's funds were preserved in her escrow account at all times as follows:

Concerning the respondent's statements to Hanchard's attorney, by letter dated June 2, 2006, the respondent advised Hanchard's attorney that she held $10,000 of the $20,000 escrow. Within weeks, the respondent, by letter dated June 17, 2006, further advised Hanchard's attorney that she held $2,000 of the $20,000 escrow. Thereafter, by letter dated November 7, 2006, the respondent advised Hanchard's attorney that she was holding $10,000 of the $20,000 escrow.

As to her representations to the petitioner, by letter dated July 22, 2010, the respondent stated that she had "continuously maintained the escrow of $10,000, with regard to [the]

transaction since 2005," and that amount had been held in the escrow account. On September 9, 2013, at her EUO at the petitioner's offices, the respondent testified that she released part of the Hanchard escrow, but that she had always maintained $10,000 in escrow. The respondent further testified that it was possible that she did not release $10,000 of the $20,000 escrow because she was "concerned about releasing it in the face of the correspondence [she] was getting" from Hanchard's attorney. The respondent also testified as follows: "I definitely did not release twenty [$20,000]. I thought I remembered releasing ten [$10,000]. I definitely didn't release twenty [$20,000]." Thereafter, by letter dated November 20, 2013, the respondent advised the petitioner that she released the Hanchard escrow, but that in 2009, she put those funds back into her account when Hanchard continued to make a claim to the funds.

Charge 9, as amended, alleges that the respondent allowed a nonlawyer to be an authorized signatory on her firm's attorney escrow account in violation of rule 1.15 (e) of the Rules of Professional Conduct (22 NYCRR 1200.0). Charge 9 alleges, among other things, that the respondent has been a partner at the firm of Wisselman, Harounian and Associates, PC since 2006. During the course of an investigation by the Nassau County Bar Association (hereinafter the NCBA) in connection with a fee dispute, the respondent provided the NCBA with a copy of check No. 3059, in the amount of $4,000 dated October 13, 2010, drawn from the Wisselman, Harounian & Associates, PC attorney escrow account, maintained at Capital One Bank (hereinafter the firm's escrow account). The respondent acknowledged that the person who signed check No. 3059 was an office manager, and was not a lawyer. The respondent further acknowledged that it was her firm's practice to designate the office manager as a signatory on the firm's escrow account. On or about September 22, 2011, the respondent's law firm requested Capital One Bank to remove the office manager as a signatory on the firm's escrow account.

Charge 10, as amended, alleges that the respondent failed to exercise reasonable management or supervisory authority over her law firm's attorney escrow account in violation of rule 5.1 (d) of the Rules of Professional Conduct (22 NYCRR 1200.0). As relevant here, at an EUO at the petitioner's offices on October 29, 2013, the respondent testified that she does not have any role over clients' monies placed in the firm's escrow account,

and that she did not have any obligations and/or did not exercise any obligations with regard to that account.

Based upon the factual specifications contained in charges 1 through 10, charge 11 alleges, inter alia, that the respondent engaged in conduct that adversely reflects on her fitness as a lawyer in violation of DR 1-102 (a) (7) of the former Code of Professional Responsibility (22 NYCRR 1200.3 [a] [7]) and rule 8.4 (h) of the Rules of Professional Conduct (22 NYCRR 1200.0).

At the hearing on October 14, 2015, the respondent executed a stipulation in which she admitted all of the factual specifications contained in the petition, as amended. In view thereof, the respondent's testimony was limited to evidence in mitigation.

The Special Referee sustained all charges, and noted, inter alia, that it appears that all of the respondent's "current problems arise from lack [of] knowledge about escrow protocol." In mitigation, the Special Referee noted, inter alia, the respondent's acknowledgment of her mistakes and sincere remorse for her errors, the remedial efforts to educate herself regarding escrow management, her unblemished record during 23 years of practice, her service to the legal and local community, and her excellent reputation.

Based on the evidence adduced and the respondent's admissions, we find that the Special Referee properly sustained the charges. Accordingly, the petitioner's motion to confirm the Special Referee's report, in which the respondent joins, is granted.

In determining an appropriate sanction to impose, the respondent seeks the issuance of a private sanction, or, in the alternative, a sanction no greater than a censure. Here, the respondent, among other things, failed to fully appreciate and understand her obligations as a fiduciary; failed to maintain the Hanchard escrow, intact, in a properly designated special account; commingled client funds with personal funds; and failed to keep required records.

Under the totality of the circumstances, we find that the respondent's conduct warrants her suspension from the practice of law for a period of one year (*see Matter of Tedeschi*, 123 AD3d 17 [2014]; *Matter of Adams*, 42 AD3d 1 [2007]).

ENG, P.J., MASTRO, RIVERA, DILLON and MILLER, JJ., concur.

Ordered that the petitioner's motion to confirm the Special Referee's report is granted; and it is further,

Ordered that the respondent, Jacqueline Harounian, is suspended from the practice of law for a period of one year, commencing November 14, 2016, and continuing until further order of this Court. The respondent shall not apply for reinstatement earlier than May 14, 2017. In such application, the respondent shall furnish satisfactory proof that during the period of suspension she: (1) refrained from practicing or attempting to practice law, (2) fully complied with this opinion and order and with the terms and provisions of the written rules governing the conduct of disbarred and suspended attorneys (*see* 22 NYCRR 1240.15), (3) complied with the applicable continuing legal education requirements of 22 NYCRR 691.11 (c) (3), and (4) otherwise properly conducted herself; and it is further,

Ordered that pursuant to Judiciary Law § 90, during the period of suspension and until further order of this Court, the respondent, Jacqueline Harounian, shall desist and refrain from (1) practicing law in any form, either as principal or agent, clerk, or employee of another, (2) appearing as an attorney or counselor-at-law before any court, judge, justice, board, commission, or other public authority, (3) giving to another an opinion as to the law or its application or any advice in relation thereto, and (4) holding herself out in any way as an attorney and counselor-at-law; and it is further,

Ordered that if the respondent, Jacqueline Harounian, has been issued a secure pass by the Office of Court Administration, it shall be returned forthwith to the issuing agency, and the respondent shall certify to the same in her affidavit of compliance pursuant to 22 NYCRR 1240.15 (f).